48742. GEORGIA POWER COMPANY v. BRAY et al.

EVANS, Judge. Georgia Power Company filed condemnation proceedings in rem for an easement over real property in Fayette County. The purpose of the easement was construction of two electrical transmission lines of high voltage. After a jury trial resulting in a verdict in favor of the condemnees, Bray and Moseley, the joint landowners, Georgia Power filed a motion for new trial, which motion was later amended, heard and denied. Georgia Power Company appeals. Generally, all enumerations of error deal with consequential damages to other property of the owners of the land. *Held:*

1. Georgia Power Company contends the court erred in allowing evidence as to consequential damages to a five acre tract owned solely by Bray and which was not a part of the remaining property that was jointly owned by both of the condemnees, Bray and Moseley. Bray had previously owned all of this acreage, but in 1968, prior to the condemnation, he conveyed a one-half undivided interest in 24.05 acres to the other condemnee, Moseley. They were in the process of developing the five acre tract and the 24.05 acre tract into residential lots for sale to prospective homeowners. They answered the condemnation suit and contended that they were tenants in common of 24.05 acres of residential lots; and that Bray individually and solely owned the five acre tract; and that both tracts were affected by the condemnation. The power line passes over only a small part of the 24.05 acres of land and none of the five acre tract.

There was testimony by experts that the construction of the transmission lines would damage the valuation of the various subdivision lots as to both the five acre tract and the 24.05 acre tract. Bray contends the invasion of and damage to his jointly owned property with Moseley by Georgia Power extends to all of his contiguous lands which includes the five acre tract.

Georgia Power cites *Kennedy v. State Hwy. Dept.,* 108 Ga. App. 1 (1) (132 SE2d 135), as controlling authority that any damage to the five acre tract could not be considered since it was indeed a separate tract. But that case is authority only for the proposition that when two separate tracts are condemned in one joint action, consequential benefits may not be set off against consequential damages. It is not in point. Here there was no evidence of any consequential benefits to the landowners whatsoever.

While the case sub judice appears to be one of first impression in this state, the most logical and sensible rule is that the property of Bray, jointly owned with Moseley, does not separate at the line of the five acre tract; and that Bray has the right to show consequential damages to all of his contiguous property. We are not involved with a separation of consequential damages between the landowners, because the court instructed the jury to consider the consequential damages to the contiguous property of the condemnees. There was no attempt to separate their damages, and the joint plaintiffs do not complain. This is the only opportunity allowed to Bray in which he may show all of the damages accrued to him by the taking or damaging of his lands for public purposes (Code Ann. § 2-301; Constitution of 1945). *State Hwy. Dept. v. Kaylor,* 110 Ga. App. 46 (137 SE2d 664). The court did not err in allowing the evidence as to consequential damage to all of Bray's contiguous property despite the fact that all of it was not jointly owned by both of the condemnees.

2. The property of the condemnees was being developed into a residential subdivision, and had been surveyed into individual house lots. A witness who testified that he was familiar with development of property in the vicinity was allowed to identify ten photographs of dwelling houses in the vicinity. These photographs were not submitted for the purpose of showing value of realty taken and damaged, or value of similar property, but were submitted to show the development of the property in the vicinity. They were also offered to contradict and rebut testimony of a witness of the condemnor who had testified there was no development north, east and west of the subdivision; and that the development of the property to the south was sparse. These photographs were objected to on the ground that they were offered to show value and do not illustrate any issue, and were not photographs of property of condemnee, which was being condemned. The court properly allowed the photographs in evidence, for the limited reason above set forth.

3. Photographs were offered in evidence which depicted similar towers used for the transmission of electrical power, although no towers were to be constructed on the easement here being condemned; yet such structures would be visible to persons while on land of condemnees. These photographs were allowed for the limited purpose of illustrating what would be visible from the subject property. There must be a physical invasion of the condemnees' property which impairs its usefulness, though there has been no taking in the technical sense of that term. *Richmond County v. Williams,* 109 Ga. App. 670 (137 SE2d 34). *Tift County v. Smith,* 219 Ga. 68 (131 SE2d 527). But in the *Richmond County* case the damages were the result of shock waves in the construction of the highway and this evidence was allowed. In the *Tift County* case, the road construction resulted in a cul-de-sac a short distance away from plaintiffs' property which created mere inconvenience and not damage as held by the Supreme Court. Here we are concerned, not with actual taking, but with consequential damage to other property of the condemnees. A special right inheres in the owners of land to possess and control same without being incumbered by such things as power lines crossing said land and detracting from or spoiling the view. The inconvenience referred to in the *Tift County* case might have been a part of the consequential damages had the cul-de-sac resulted from the taking of contiguous property of the condemnees, for it was stated in the *Tift County* case (p. 72): "It must be remembered that in this situation the rights of the plaintiffs fall into two categories: general rights, which they have in common with the public, and special rights, which they hold by virtue of their ownership of this property. In order to constitute a taking or damaging of their property, it is the special rights that must have been violated." Had no part of condemnees' property been involved in the construction of the transmission lines, only their general rights would be involved as inconvenience and ugliness. But here there was an actual taking, and incidentally involved is the consequential damage to the adjoining property of the condemnees. There is no merit in this complaint.

4. There has been no showing that the verdict of the jury and judgment thereon were erroneous or illegal. Let the judgment be affirmed.

*Judgment affirmed. Hall, P. J., and Clark, J., concur.*

ARGUED NOVEMBER 6, 1973 — DECIDED JANUARY 10, 1974 —

REHEARING DENIED JANUARY 24, 1974 — 

*Jones, Cork, Miller & Benton, Wallace Miller, Jr., Hutcheson & Kilpatrick, Lee Hutcheson,* for appellant.
*Charles T. Ballard,* for appellees.